**CARDINAL NEWMAN COLLEGE, Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, State of Missouri Division of Employment Security and Barry Rigney, Respondents.**

**No. 43891.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 10, 1981.

Donald Gunn, Jr., St. Louis, for appellant.

Kevin M. Hare, Labor & Industrial Relations Commission, Rick Morris, Susan Haag, Jefferson City, for Division of Employment Security.

Joseph P. Lavin, Stanley Sicher, St. Louis, for Barry Rigney.

REINHARD, Presiding Judge.

This is an appeal by Cardinal Newman College (employer) from the trial court's affirmance of a decision of the Labor and Industrial Relations Commission (Commission). The Commission found that Barry N. Rigney (claimant) did not leave work voluntarily and was not disqualified for waiting week credit or benefits pursuant to Section 288.050 RSMo. 1978.[1] We affirm.

Claimant entered into a written employment contract with Cardinal Newman College, a four year accredited institution of higher education, whereby he was appointed to the position of assistant professor for the period August 15, 1978 to May 15, 1979. Paragraph four of the contract provided that termination "shall be effected in accord with the ... provisions of the HANDBOOK FOR FACULTY AND ADMINISTRATORS ...."

The Faculty Handbook provided for three means of termination:

1) By mutual consent of the parties;

2) By notice to individual members of the faculty that a contract will not be renewed;

3) By dismissal for cause.

The Handbook further provided, "Faculty members whose contracts are not being renewed will be informed not later than December 15 of the existing contract period. Faculty members whose contracts are being renewed will be advised of new conditions of such contracts on or before April 15 of the existing contract period."

On February 14, 1979, pursuant to termination method number two above, claimant received a letter from his employer advising him that he would not be offered a new contract for the next year.[2]

---

1. "[A] claimant shall be disqualified for waiting week credit or benefits until after he has earned a wage equal to ten times his weekly benefit amount if the deputy finds (1) That he has left his work voluntarily without good cause attributable to his work or to his employer; ...."

2. There is no explanation in the record as to the reason claimant did not receive notice prior to December 16 as required by the Handbook.

Claimant's last day of work was May 11, 1979. He thereupon filed for unemployment compensation benefits. After a deputy found claimant not to be disqualified for benefits, employer filed a timely appeal. The Appeals Tribunal affirmed the deputy's determination. Employer appealed to the Commission which declined review, thereby making the decision of the Appeals Tribunal the decision of the commission for purposes of judicial review. *Jennings v. Labor and Industrial Relations Commission*, 579 S.W.2d 845, 847 (Mo.App.1979); § 288.200 RSMo. 1978.

We must review the evidence in the light most favorable to the finding and award of the Commission, consider all reasonable inferences favorable to the claimant which the Commission was entitled to draw from the evidence. We may not substitute our judgment for that of the Commission, but are authorized only to decide if such Tribunal could reasonably have made its findings upon consideration of all the evidence before it, and to set aside its decision only if it is contrary to the overwhelming weight of the evidence. *Govreau v. Farmington Transfer Company*, 473 S.W.2d 750, 751 (Mo.App.1971). As to questions of law, the Court of Appeals is not bound by the decisions of the Commission. *Jennings v. Labor and Industrial Relations Commission*, 579 S.W.2d 845, 847 (Mo.App.1979).

The sole issue is whether the claimant left work voluntarily. Employer contends the Commission erroneously declared and applied the law because claimant knew that May 15, 1979 was his termination date when he signed the contract with employer. Consequently, at the expiration of the contract, employer argues claimant voluntarily terminated his employment without good cause attributable to his work or to his employer. In support of its contention, employer cites *Kilgore v. Industrial Commission*, 337 S.W.2d 91 (Mo.App.1960). In *Kilgore*, the court held that a substitute union projectionist voluntarily left his employ-

ment when the regular projectionist returned to work, bumping him, pursuant to the terms of a union contract. The court held that the termination in accordance with the union contract constituted a voluntary termination and the claimant was disqualified from unemployment benefits. The court relied heavily upon *Anson v. Fisher Amusement Corp.*, 254 Minn. 93, 93 N.W.2d 815 (1958) and quoted with approval from that court as follows:

"Normally, either the employee has voluntarily terminated his employment, in which case no compensation is paid, or the employer has without good cause deprived the employee of his employment, in which case compensation is paid. In each of these cases, 'fault' may be attached to one party or the other, and the granting or denying of compensation is in keeping with impartial justice."

. . . . .

"Whether the separation from the employment is the voluntary or involuntary act of the employee is determined not by the immediate cause or motive for the act but by whether the employee *directly* or *indirectly* exercised a free-will choice and control as to the performance or nonperformance of the act. If the act of employment separation was performed by him directly of his own free will, or indirectly by his act of vesting in another discretionary authority to act in his behalf, the ultimate resulting act is a voluntary one which disqualifies him for compensation . . . . (emphasis original) *Kilgore* at 98.

Applying this test to the facts before us, we hold that claimant did not "directly or indirectly [exercise] a free-will choice as to separation from employment." Employer argues that by signing a contract that expired on May 15, 1979, claimant directly, by his own free will agreed to become unemployed on that date. But the terms of the contract do not support employer's asser-

The letter of February 14, 1979 does refer to a "memo addressed to the faculty on December 14, 1978," however that memo has not been

made a part of the record. Claimant does not contend that he was improperly terminated.

tion. The Faculty Handbook, incorporated by reference into the contract, recognizes that claimant's employment would continue beyond May 15, 1979, unless he was notified not later than December 15, 1978. Since claimant testified that he was able and willing to continue his job as an assistant professor and the terms of his contract with employer provided for an opportunity of employment beyond the stated expiration date of the contract, claimant did not agree to become unemployed on that date. It was employer's act which resulted in claimant leaving work. This cannot constitute, under these circumstances, a direct free will choice of the claimant to separate himself from employment and therefore, such termination was not voluntary.[3]

Neither did claimant indirectly exercise his free will "by his act of vesting in another discretionary authority to act in his behalf." *Kilgore* at 98. In *Anson* and *Kilgore*, the one who exercised authority on claimant's behalf was a labor union. Here, the employer was acting on behalf of itself and not on behalf of the claimant when his employment was terminated.

Affirmed.

SNYDER and CRIST, JJ., concur.

---

**3.** The Commission would have us hold that in all cases of employment for a definite, specific, limited duration, termination of employment at the end of that period is always involuntary within the meaning of the Act. No Missouri case has ruled on this precise point and such circumstances do not exist here. The Commission relies principally upon *Cervantes v. Administrator, Unemployment Compensation Act,* 177 Conn. 132, 411 A.2d 921 (1979). There the court held the employee's termination was involuntary, but we note the court stated:

> [W]e do not intend to imply that, under other circumstances, an employee cannot, by contractual agreement, agree to terms which

effect a voluntary ending of employment on a future date. Rather, the particular facts of each case must be examined to determine whether the termination of employment is truly "voluntary" within the intent and meaning of the unemployment compensation act.

The other case cited by the Commission, *Kentucky Unemployment Insurance Commission v. American National Bank & Trust Co.,* 367 S.W.2d 260 (Ky.App.1963) does support its contention. *See Wilmington Country Club v. Unemployment Insurance Appeal Board,* 301 A.2d 289 (Del.1973), however, for an opposite view.