John D. SIGETICH,
Plaintiff–Respondent,

v.

GREAT EAGLE ENTERPRISES CORP., a corporation and B. Karl Schweickhardt, Milrene Alexander, Melessa Tobias, and Florence Craden, Defendants–Appellants.

No. 53409.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 14, 1988.

William B. Cunningham, Jr., St. Louis, for defendants-appellants.

Lester H. Goldman, St. Ann, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from an order of summary judgment on Plaintiff's claim for breach of contract.

Plaintiff was hired on December 23, 1981, under a written contract as manager of Defendant's abrasive products division. His immediate superior was Karl Schweickhardt, president of Defendant and its major stockholder. The contract provided:

"2. *Term.* The term of employment shall continue from year to year unless terminated by either party by thirty days written notice to the other or unless otherwise earlier terminated by Company in accordance with the provisions of paragraph 8 hereof ....

"8. *Termination of Employment.* The Board of Directors of Company may forthwith terminate John's employment hereunder in the event that John shall cause substantial injury to Company by reason of his willful misfeasance, gross negligence or reckless disregard of the duties involved in the conduct of his office or by reason of intentional breach of this Agreement...."

In *August 1983, Plaintiff and Schweick-hardt were on a business trip to Arizona. In what the parties refer to as a discussion, the subject of Plaintiff's sexual liaison with Schweickhardt's wife arose. This liaison, fully admitted by Plaintiff in the trial court, occurred during the period of Plaintiff's employment by Defendant.* Plaintiff contended that he was terminated in September as a result of this liaison; Defendant asserted that Plaintiff resigned after the discussion. On Plaintiff's claim for unemployment benefits the Labor and Industrial Commission found that Plaintiff was terminated because of this liaison and that the discharge was "for misconduct connected with his work."

In its answer Defendant raised defenses that (1) it properly notified Plaintiff thirty days prior to the September termination pursuant to paragraph 2 of the contract, (2) that Plaintiff voluntarily quit his employment, (3) that Plaintiff was discharged for cause under paragraph 8 and (4) that Plaintiff was collaterally estopped by the decision of the Labor and Industrial Commission. Both parties filed motions for summary judgment. Plaintiff's was granted, Defendant's denied. Defendant appeals from the granting of Plaintiff's motion for summary judgment.

The parties joined issue below on whether paragraph 2 provides for termination on thirty days notice or whether it provides for yearly contracts with each year's extension subject to non-renewal upon thirty days notice prior to the beginning of that year. Plaintiff contends here that the submission of that issue served as an admission by Defendant that no other issues of fact or law existed in relation to the breach of contract claim. We are unable to so interpret the record. Plaintiff's motion for summary judgment was in the most general terms and his suggestions in support dealt only with the interpretation of paragraph 2 of the agreement. Defendant's motion for summary judgment, filed prior to Plaintiff's, sought judgment based upon its interpretation of that same paragraph. Granting Defendant's motion would have concluded the litigation because had its interpretation been accepted there would be no breach of contract on the admitted facts. A finding for Plaintiff on that paragraph on the other hand, disposes only of one of the defenses of Defendant leaving still unresolved defenses upon which factual dispute exists. We view Plaintiff's motion as one for partial summary judgment on the legal interpretation of paragraph 2.

█ As regards that legal interpretation we find no error by the trial court. The language of paragraph 2 indicates that the

contract is to be automatically renewed each year. This is qualified by the thirty day written notice provision. If that provision is to be interpreted as defendant suggests, then the year to year term has no real meaning. To give effect to both provisions requires an interpretation that the contract term is for one year to be renewed automatically unless either party gives notice thirty days before the anniversary date of an intention not to renew.

Defendant relies upon *Kemnetz v. Elliott Farmers Grain Company*, 136 Ill. App.3d 226, 90 Ill.Dec. 793, 482 N.E.2d 1076 (1985) as supporting its interpretation of the contract. The contract in that case was similar but not identical to that before us. In that contract the thirty day notice provision was separated from the year to year provision by two additional means of cancelling the contract. In holding that the thirty day notice provision was an additional means of cancelling, the court noted, "The provision is not listed in such context with the statement that the contract may run from year to year as to indicate that it is applicable only to preventing the contract from remaining in force for another calender year." In contrast to the contract in that case the juxtaposition of the thirty day provision to the year to year provision here indicates it is intended to serve as the means for preventing the contract from remaining in force for another year. We affirm the trial court's order for summary judgment to the extent it holds that Defendant was not authorized to terminate Plaintiff's contract under the thirty day provision of paragraph 2.

 Beyond that limited holding the trial court erred in entering the summary judgment. Whether Plaintiff quit or was terminated presented disputed issues of fact. The letter of termination refers to "mutual agreement" and the right of "either party" to terminate on thirty days notice under paragraph 2. That letter does not establish who was the initiating party to the cessation of Plaintiff's employment.

 The question of whether Plaintiff was properly discharged under paragraph 8 also requires resolution of disputed facts.

It could well be concluded that an employee who so damages his relationship with his superior by fornicating with that superior's wife is guilty of misconduct and can properly be fired for cause. The contract here, however, is not worded as "misconduct" or "cause." Rather it requires a showing that Plaintiff caused "substantial injury to Company by reason of his willful misfeasance, gross negligence or reckless disregard of the duties involved in the conduct of his office." That language requires factual determinations.

 We note in passing that Defendant's reliance on collateral estoppel pursuant to *Bresnahan v. May Department Stores Co.*, 726 S.W.2d 327 (Mo. banc 1987) is misplaced for two reasons. The decision of the Commission was that Plaintiff was guilty of misconduct on the undisputed facts before the Commission. That was a conclusion of law, not a resolution of an issue of fact. *Bresnahan* applies to fact issues decided in prior litigation. Courts are not bound by decisions of the Commission on questions of law. *Cardinal Newman College v. Labor and Industrial Relations Commission*, 624 S.W.2d 532 (Mo. App.1981) [1, 2]. Further, resolution that Plaintiff is guilty of "misconduct" for purposes of unemployment compensation is not a determination that he has engaged in the conduct spelled out in paragraph 8 as justifying termination under the contract.

The order granting summary judgment based on rejection of Defendant's affirmative defense under paragraph 2 is affirmed, in all other respects the order is reversed and the cause remanded for further proceedings.

KAROHL, P.J., and KELLY, J., concur.